STATE OF MAINE
*vs.*
RAYMOND C. HUME

Kennebec.   Opinion, January 5, 1950.

*James L. Reid, County Attorney,* for State of Maine.

*William H. Niehoff,* for respondent.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J.   A jury found this respondent guilty of breaking and entering and larceny, under an indictment alleging his entry into:

> "the office of the Maine Central Railroad Station,
> * * * of one Maine Central Railroad Company,"

and the stealing, therefrom, of certain metallic and paper currency:

> "the property of said Maine Central Railroad Company."

There was no allegation that the owner of the premises and property named was a corporation, or was incorporated. After verdict, and before judgment, the respondent filed a motion in arrest, alleging the indictment defective, or insufficient in law, because of that omission, and on an additional ground waived when the case was argued.   The motion was denied.

Respondent's exceptions allege error in rulings on the motion and on the admission, over objection, of two items of evidence.   Exceptions were reserved, and perfected, on each ruling.   We consider the motion first, not merely because it appears first in the Bill of Exceptions, but because there would be no point in considering the others unless the indictment is sufficient to support a conviction on a retrial of the case.   The County Attorney argues that the defect in the indictment, if any, which he denies, is one of form only, and that the motion was not open to the respondent after verdict.   There is no merit in this assertion.   Even if the motion had not been filed it would be the duty of this court to arrest the judgment if the verdict did not find the respondent guilty of an offense in law.   *State* v. *McAloon*, 40 Me. 133.

Copies of the indictment and the motion, and a transcript of the evidence of the witnesses whose testimony is in question, and nothing more, are incorporated in the Bill of Exceptions.   These are sufficient to permit the court to pass

upon the issues raised, so far as they are essential to a disposition of the case. Nothing more is required. *Merrill* v. *Merrill*, 67 Me. 70. See also *Jones* v. *Jones et al.*, 101 Me. 447; 64 A. 815; 115 Am. St. Rep. 328, and cases cited therein.

In considering the indictment and its alleged defect, we note at the outset that there is "much contrariety" in reported decisions on the question whether the owner of property mentioned in an indictment must be alleged to be a corporation, if it is. Such is the statement of *People* v. *Mead*, 200 N. Y. 15; 92 N. E. 1051; 140 Am. St. Rep. 616, and 17 R. C. L. 62, Sec. 67 In both, as in 32 Am. Jur. 1028, Sec. 114, it is said that the rule which prevailed long ago in England, and required "great particularity in the description of persons," had been followed in some jurisdictions in this country, and relaxed in others. This court has never been called upon to take a position on it. There is adequate authority either way. An annotation, and a note, following the reports, in A. L. R., of *People* v. *Cohen*, 352 Ill. 380; 185 N. E. 608; 88 A. L. R. 481, and in Ann. Cas., of *State* v. *Clark*, 223 Mo. 48; 122 S. W. 665; 18 Ann. Cas. 1120, group many jurisdictions according to their conflicting positions. The note in Ann. Cas. states the reasons underlying the requirement of an allegation of incorporation, where it is held requisite, as does *Fisher* v. *State*, 40 N. J. L. (11 Vroom) 169, where they are said to be:

> "in fairness, to inform the defendant of the precise offense with which he is charged, and also to secure him against another prosecution for the same offense."

The Indiana Court, in *Norton* v. *State*, 74 Ind. 337, declared, the view that it was fairly deducible from the authorities that when a name was used in an indictment which was apparently a corporate one, a corporate existence might be implied without being averred. We are in accord with that view, as with the further statement of that court, in that case, that no innocent person could be imperiled by

the absence of an allegation of incorporation under such circumstances, although many guilty ones might escape merited punishment if its omission was held to render an indictment defective. It is interesting to note, in considering the old rule, which the cases and notes seem to indicate has been relaxed to some extent in England, that Virginia dispensed with it as far back as 1822. *Lithgow* v. *Commonwealth*, 2 Va. Cas. 297.

The tendency of this court to avoid adherence to refinements in criminal pleading was asserted in *State* v. *Littlefield*, 122 Me. 162, 163; 119 A. 113, in language sufficiently broad to cover such a case as the present. There it was said:

> "When an indictment employs * * * language which makes clear and unambiguous the offense * * * charged, * * * we are of the opinion that such indictment is sufficient and should not be quashed."

This statement was quoted with approval in *State* v. *Smith*, 140 Me. 255, 282; 37 A. (2nd) 246, 258. The *Littlefield* and *Smith* cases involved a liquor nuisance and embezzlement, respectively, but the principle asserted in the quoted excerpt is applicable generally. The indictment in this case satisfies fully the requirement of notice to the respondent of the exact crime with which he is charged there emphasized and the additional one of security for him against a later prosecution for it, whether acquittal or conviction results. The omission in the indictment under review to allege that the owner named was a corporation, or was incorporated, does not render it defective.

The evidence rulings challenged by the exceptions relate to (1) a question asked of a witness for the state, challenged as to form on the ground that it was leading, which we shall not consider because the case must be controlled by the other, and (2) a question asked of a defense witness for the purpose of impeaching her credibility. Her testimony if it had been believed, would have given the respond-

ent a complete alibi. She was asked whether she had been "convicted of a criminal offense." The answer "Yes" was given after express admonition by the Trial Court that it must be answered categorically. The immediately preceding question, not pressed after objection, was whether the witness had served a sentence in the Women's Reformatory. The County Attorney stated in colloquy, after objection was made, that it was for a crime involving moral turpitude.

The alibi was the vital point in the defense and whatever would have cast doubt on the credibility of the witness was prejudicial if the ruling was erroneous. Our sole inquiry therefore will be whether it was erroneous.

The County Attorney argues that the exception should be overruled because counsel for the respondent assigned no specific ground for his objection, citing *Moulton* v. *Perkins*, 116 Me. 218; 100 A. 1020, and other cases, on the point. The foundation for the rule on which he relies is that a trial court is entitled to know what it is ruling on and should not be chargeable with error unless advised of the ground of an objection. The comment of the County Attorney on the preceding question, not pressed, recognized that the objection thereto was based on P. L., 1947, Chap. 265, Sec. 1. The Trial Court could not have been unaware that the objection to the question in issue was based on that law, which was before the court in *State* v. *Jenness*, 143 Me. 40; 62 A. (2nd) 867. Its language is so clear and unambiguous that it cannot be said to require construction or interpretation, but it was said in the *Jenness* case that it disclosed a plain legislative intention that after its effective date the credibility of witnesses testifying in our courts should not be impeached by evidence of their earlier convictions for crime except, to use the statutory words, such as involved:

"a felony, any larceny or any other crime involving moral turpitude."

This precludes the possibility of impeaching witnesses for earlier convictions of crime except those described by the

quoted language. An affirmative answer to any question of the general type in issue produces the very damage the statute was designed to prevent. The protection of a witness' credibility from attack it was intended to furnish would be destroyed by evidence of a conviction which might or might not be of any of the designated types. It would be impossible to frame a question more manifestly contrary to the intention and purpose of the statute than the one here presented. The ruling was erroneous and the exception to it must be sustained.

*Exceptions sustained.*